GARY I. GATES, Secretary Department of Employe Trust Funds
On behalf of the Deferred Compensation Board (DCB), you request my opinion on the following question:
 Does s. 40.80 (2m), Stats., created by 1989 Wis. Act 31, require the Deferred Compensation Board to establish alternative deferred compensation plans in addition to the deferred compensation plan offered by deferred compensation providers selected and contracted with under s. 40.80 (2), Stats., or, does the Deferred Compensation Board have the discretion to continue with the present single-administrator deferred compensation system?
It is my opinion that section 40.80, Stats., requires the DCB to promulgate administrative rules for offering deferred compensation plans in addition to the plan or plans required to be selected and contracted for under subsection (2). These required administrative rules would establish the matrix of procedures, requirements and qualifications for alternative plans. Subsection (2m) does not require that an alternative plan be offered if the DCB does not consider an additional plan necessary or if none meets the specifications set forth in the rules nor does such subsection allow an alternative plan or plans to supplant the plan or plans required to be contracted for by the DCB under subsection (2).
Section 40.80 provides, as amended by 1989 Wisconsin Acts 31 and 336: *Page 169 
 STATE DEFERRED COMPENSATION PLAN. (1) The deferred compensation board shall select and contract with deferred compensation plan providers to be used by state agencies.
(2) The deferred compensation board shall:
 (a) Determine the requirements for and the qualifications of the deferred compensation plan providers.
 (b) Approve the terms and conditions of the proposed contracts for administrative and investment services.
 (c) Determine the procedure for the selection of the deferred compensation plan providers.
 (d) Approve the terms and conditions of model salary reduction agreements which shall be used by each state agency.
 (e) Require as a condition of the contractual agreements entered into under this section that approved deferred compensation plan providers shall provide service to state agencies only as approved by the deferred compensation board.
 (f) Require as a condition of the contractual agreements entered into under this section that the deferred compensation plan providers shall reimburse the department, to be credited to the administrative account of the public employe trust fund in s. 40.04 (2), for any costs incurred directly or indirectly by the department in soliciting, evaluating, monitoring and servicing deferred compensation plans.
 (2m) The deferred compensation board shall promulgate rules establishing procedures, requirements and qualifications for offering deferred compensation plans to state employes in addition to the deferred compensation plans offered by deferred compensation providers selected and contracted with under sub. (2). *Page 170 
 (3) Any action taken under this section shall apply to employes covered by a collective bargaining agreement under subch. V of ch. 111.
"Deferred compensation plan" is defined as:
 a plan which is in accordance with section 457 of the federal internal revenue code, under which an employer executes an agreement by which an employe voluntarily agrees to defer a part of gross compensation for payment at a later date.
Sec. 40.02 (18g), Stats.
"Deferred compensation plan provider" is defined as:
 a person who provides administrative or investment services related to deferred compensation plans.
Sec. 40.02 (18s), Stats.
The deferred compensation plan is implemented through a request by a state officer or employe to his employing agency. As stated in section 20.921 (1)(bm), Stats.:
 Any state officer or employe may request in writing that a specified part of his or her salary be deferred under a deferred compensation plan of a deferred compensation plan provider selected under s. 40.80. The request shall be made to the state agency in the form and manner prescribed in the deferred compensation plan and may be withdrawn as prescribed in that plan.
The state deferred compensation system was established effective April 21, 1982, by chapter 187, Laws of 1981. At its inception the authority to contract with the required provider or providers was in the Employe Trust Funds Board (ETFB). In accordance with the requirement to "select and contract" with deferred compensation providers, section 40.80 (1), the ETFB selected and contracted with an administrator and each individual investment option offered. As stated in your request letter:
 The Board [formerly ETFB, now DCB] selects each individual investment option to be offered and contracts *Page 171 
directly with the investment company offering that investment vehicle. The entire package of options is administered, under the oversight of the Board, by a single administrator who provides all marketing, enrollment and recordkeeping services for the program. Administrative costs are paid directly by the participating employes.
. . . .
 The administrator of this present single-administrator system is selected by a competitive request for proposal process which considers program design, level of service to participants and the state, and the level of fees to be paid by participants. The State of Wisconsin Deferred Compensation Program is currently administered by Public Employees Benefit Services Corporation (PEBSCO).
1989 Wisconsin Act 31 prospectively transferred the ETFB deferred compensation duties to the therein created DCB and set forth the additional-plan language of subsection (2m). Such newly-created subsection (2m) statutory language provides that the DCB "shall promulgate rules establishing procedures, requirements and qualifications for offering deferred compensation plans to state employes in addition to the deferred compensation plans offered by deferred compensation providers selected and contracted with under sub (2)."
The first question that arises is whether "shall" was intended to be mandatory or directory. "Strict compliance with a directory statute is not required." Appeal From Recount in ElectionContest, 105 Wis.2d 468, 483, 313 N.W.2d 869 (Ct.App. 1981).
It is my view that the Legislature intended this use of the word "shall" to be mandatory. As the court of appeals stated in InInterest of F.T., 150 Wis.2d 216, 224, 441 N.W.2d 322 (Ct. App. 1989):
 Use of the word "shall" creates a presumption that the statute is mandatory. Karow v. Milwaukee County Civil Service Commission, 82 Wis.2d 565, 570, 263 N.W.2d 214, 217 (1978). The presumption is strengthened where the *Page 172 
legislature uses "may" in the same or related statutory sections. Such use demonstrates recognition of the differences in the meanings of the two words and implies purposeful use of each. Id. at 571, 263 N.W.2d at 217.
While the word "shall" is used throughout section 40.80, section40.81, concerning use of the deferred compensation plan by local employes, uses both "shall" and "may" as follows:
 DEFERRED COMPENSATION PLAN AUTHORIZATION. (1) An employer other than the state may provide for its employes the deferred compensation plan established by the board under s. 40.80. Any employer, including this state, who makes the plan under s. 40.80 available to any of its employes shall make it available to all of its employes under procedures established by the department under this subchapter.
 (2) Any local government employer, or 2 or more employers acting jointly, may also elect under procedures established by the employer or employers to contract directly with a deferred compensation plan provider to administer a deferred compensation plan or to manage any compensation deferred under the plan and may also provide a plan under section 403 (b) of the internal revenue code under procedures established by the local government employer or employers.
 (3) Any action taken under this section shall apply to employes covered by a collective bargaining agreement under subch. IV of ch. 111.
Similarly, the Legislature used both terms, "shall" and "may," in section 40.82 which deals with the definition of earnings and with investment of deferred compensation funds.
As stated in Town of Nasewaupee v. Sturgeon Bay, 146 Wis.2d 492,496, 431 N.W.2d 699 (Ct.App. 1988):
 In determining whether a statutory provision is directory or mandatory, we examine factors such as the objectives sought to be accomplished by the statute and the *Page 173 
consequences that would follow from alternative interpretations. (Case cite omitted.)
The apparent objective sought to be accomplished by subsection (2m) is to require the DCB to establish "procedures, requirements and qualifications" for offering additional deferred compensation plans under the public scrutiny and legislative oversight provided by sections 227.18 and 227.19. Section 40.80 at subsection (2) similarly authorizes and requires the DCB to determine procedures, requirements and qualifications of providers but does not require establishing them as rules. The specific areas set forth at subsection (2)(a) thru (f) encompass and exceed the elements contained in "procedures, requirements and qualifications." Since DCB is specifically granted such authority to select and contract under subsections (1) and (2), subsection (2m) must have the objective of requiring and expanding such required "procedures, requirements and qualifications" under the legislative oversight and public scrutiny contained in the administrative rule procedure.
A discretionary interpretation of "shall" as used in subsection (2m) would cause such subsection to be surplus. As the supreme court states in St. ex rel. Teunas v. Kenosha County, 142 Wis.2d 498,511, 418 N.W.2d 833 (1988): "We have consistently avoided adopting a construction of statutes which would result in rendering a part of a statute surplusage" (case cites omitted). The authority granted under subsection (2) to determine the requirements, qualifications and procedure (subsections (2)(a) and (c)) could have been implemented by rule. See sec. 227.11 (2)(a), (b), Stats. Since DCB (and predecessor DETF) already had authority to promulgate rules in this area, it was not necessary to grant similar authority in subsection (2m). It therefore appears that the Legislature intended the word "shall" as used in subsection (2m) to be mandatory. This conclusion is supported by the presumption that the Legislature did not intend to legislate in vain and that it had a specific purpose in mind. Haas v. Welch,207 Wis. 84, 86, 240 N.W. 789 (1932). *Page 174 
The next question to be considered is whether the mandatory language of subsection (2m) requires the DCB to establish and offer alternative plans. This requires interpretation of the language "shall promulgate rules establishing procedures, requirements and qualifications for offering deferred compensation plans." I do not interpret the intent of the term "for offering" to be a requirement that the DCB provide one or more additional plans. "Offering" and "offered by," as used in the next line of subsection (2m), relate to action of the "deferred compensation providers" not the DCB. The Legislature recognized by use of the words "in addition to the deferred compensation plans" that the authority granted under subsection (2) included that of providing multiple plans. Had the Legislature intended to require offering of one or more additional plans it could have simply indicated such a requirement in wording the subject statutory subsection. See Kopacka v. ILHR Department,49 Wis.2d 255, 259, 181 N.W.2d 487 (1970); Sperbeck v. ILHRDepartment, 46 Wis.2d 282, 290, 174 N.W.2d 546 (1970). It did not do so.
For example, in section 846 of 1989 Wisconsin Act 31, in close proximity to the creation of subsection (2m) by section 841 of Act 31, the Legislature used the language "[p]romulgate by rule procedures, standards and forms necessary to certify, andshall certify." Similarly at section 847am, again in close proximity, the Legislature created a statute using the words "promulgate rules identifying historically significant material andobtain historically significant surplus materials." So also could the Legislature, if such was the intent, have included language in subsection (2m) to direct the DCB to cause such alternative plans or plans to be offered. I, therefore, read the intent of the Legislature to be directory rather than mandatory to the extent that the DCB need implement, by selecting and contracting under subsection (1), the offering of additional plans which satisfy the matrix it establishes in the rules required by subsection (2m). This is consistent with the clear legislative indication of intent in *Page 175 
(2m) that any alternative plan or plans are "in addition to" plans offered by providers selected under subsection (2).
I therefore conclude that subsection (2m) of section 40.80 (as created by 1989 Wisconsin Act 31) is properly interpreted to mandatorily require only the establishment of rules for alternative or supplemental plans but not to require that any such plans need be offered.
DJH:WMS *Page 176